**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q.R., a minor, by and through his natural mother
and next friend JANE DOE,                              Case No.: 6:25-cv-01093-HLT-BGS

      Plaintiff,

v.

ICF TECHNOLOGY, INC.; ACCRETIVE
TECHNOLOGY GROUP, INC.; 4355768
CANADA INC. D/B/A CRAKMEDIA
NETWORK; AND JOHN DOE, D/B/A
JERKMATE.COM,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS ICF TECHNOLOGY, INC. AND**
**ACCRECTIVE TECHNOLOGY GROUP, INC.'S MOTION TO DISMISS**

i

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………...…………...ii

TABLE OF AUTHORITIES…………………………………………………...…………iii-v

I.   Introduction……………………………………………………………………1

II.  Background……………………………………………………………………1

III. Argument………………………………………………………………….…2

    A.  Standard of Review for the Personal Jurisdiction Inquiry in the
       Context of Merely Accessing a Website …………………...…………………....2

    B.  Q.R.'s Own Conduct Cannot Supply Personal Jurisdiction……...………………9

    C.  Plaintiff's Attempts to Substantiate Personal Jurisdiction Based
       on ICF and ATG's Supposed Conduct Must Fail……………...………………..10

    D.  Plaintiff's Improper Group Pleading Fails to Establish Personal
       Jurisdiction Over ATG and ICF Under Any Theory…………………………….14

IV.  Conclusion……………………………………………………………………15

CERTIFICATE OF SERVICE……………………………………………………...16

# TABLE OF AUTHORITIES

Case(s)                                                                    Page(s)

*Abney v. Philip Morris USA,*
    2024 U.S. Dist. LEXIS 37640 (D. N. Mex. Mar. 4, 2024)……………….…………………14

*Berdeaux v. OneCoin Ltd.,*
    561 F. Supp. 3d 379 (S.D.N.Y. 2021)………………………………………………………..14

*Butler v. Daimler Trucks N. Am.,*
    2020 U.S. Dist. LEXIS 148739 (D. Kan. Aug. 18, 2020)……………………………………11

*C5 Med. Werks v. CeramTec GmbH,*
    937 F.3d 1319 (10th Cir. 2019)………………………………………………………………13

*Dental Dynamics, LLC v. Jolly Dental Grp., LLC,*
    946 F.3d 1223 (10th Cir. 2020)………………………………………………………………..3

*Fitn40, LLC v. Glanbia Nutritionals (Ir.) Ltd.,*
    2022 U.S. Dist. LEXIS 3726 (D. Utah Jan. 7, 2022)…………………………...…………8, 13

*GCIU-Employer Ret. Fund v. Coleridge Fine Arts,*
    700 Fed. Appx. 865 (10th Cir. 2017)…………………………………………...……14

*Gould v. Wyse,*
    2023 U.S. App. LEXIS 20140 (10th Cir. Aug. 4, 2023)…………………………...………3, 14

*Great Divide Brewing Co. v. Gold Key/PHR Food Servs., LLC,*
    127 F. Supp. 3d 1137 (D. Colo. 2015)………………………….……………………………..8

*Huffman v. Blue Compass RV, LLC,*
    2024 U.S. Dist. LEXIS 100849 (D. Kan. June 6, 2024)……………………….……………10

*Kluin v. Am. Suzuki Motor Corp.,*
    274 Kan. 888 (Kan. 2002)……………………………………………………………………3, 11

*Loudermill v. Brattin,*
    2024 U.S. Dist. LEXIS 190779 (D. Kan. Oct. 21, 2024)……………………………7, 9, 12

*Old Republic Ins. Co. v. Continental Motors, Inc.,*
    877 F.3d 895 (10th Cir. 2017)……………………………………………………..2, 3, 6, 9, 11

*Rush v. Savchuk,*
    444 U.S. 320 (1980)……………………………………………..…………………………..14

# TABLE OF AUTHORITIES Con't

Cases                                                                    Page(s)

*Sebo Am., LLC v. Azar,*
   2021 U.S. Dist. LEXIS 34245 (D. Colo. Feb. 24, 2021)……………...…………………….8-9

*Shrader v. Biddinger,*
   633 F.3d 1235 (10th Cir. 2011)……………………………………….……………..5, 7, 9, 12

*Sims Glob. Sols., LLC v. Specialized Shipping, LLC,*
   2024 U.S. Dist. LEXIS 47161 (D. Kan. Mar. 18, 2024)……………….……………………11

*Temple v. Ghadimi,*
   2023 U.S. Dist. LEXIS 12060 (D. Kan. Jan. 24, 2023)…………………………………...8, 10

*Ubel v. Progressive Direct Ins. Co.,*
   2020 U.S. Dist. LEXIS 213414 (D. Colo. Oct. 22, 2020)………………………...….8, 12

*Walden v. Fiore,*
   571 U.S. 277 (2014)………………………………………………………………………4, 12

*Wenz v. Memery Crystal,*
   55 F.3d 1503 (10th Cir. 1995)………………………………………………………………3

*Wingate v. Barkman Honey LLC,*
   2020 U.S. Dist. LEXIS 10201 (D. Kan. Jan. 22, 2020)……………….……………..………3, 13

*XMission, L.C. v. Fluent LLC,*
   955 F.3d 833 (10th Cir. 2020)…………………………….…………………...….4-5, 6, 10


Federal Statutes

47 U.S.C. §230…………………………………………...…………………………………1


Federal Rules

Federal Rule of Civil Procedure 12(b)(2)…………………………………………………1, 2


State Statutes

K.S.A. §50-6,146……………………………………………………………………………1, 3

K.S.A. §50-623………………………………………………………………………………1

## TABLE OF AUTHORITIES Con't

<u>Cases</u>                                                                                                          <u>Page(s)</u>

K.S.A. §50-638……………………………………………………...……………..……………3

K.S.A. §60-308……………………………………………………...………………………….3

K.S.A. §60-3305…………………………………………………………………………....2

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS ICF TECHNOLOGY, INC. AND**
**ACCRECTIVE TECHNOLOGY GROUP, INC.'S MOTION TO DISMISS**

## I.    Introduction

Plaintiff Q.R., a minor, by and through his mother, Jane Doe, brought a diversity action against ICF Technology, Inc. ("ICF") and Accretive Technology Group, Inc. ("ATG") as well as another defendant, 4355768 Canada, Inc. d/b/a Crakmedia Network, seeking damages for alleged violations of the Kansas Internet Content Harmful to Minors statute ("Age Verification Law"), the Kansas Consumer Protection Act, and the Kansas Product Liability Act, as well as for alleged negligence and negligence *per se*.

For the reasons set forth below, the Complaint (Dkt. 1) against ICF and ATG is subject to dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.[1]

## II.    Background

On May 12, 2025, Plaintiff filed a five-count Complaint (Dkt. 1) against the three Defendants, ATG, ICF, and Crakmedia. In the Complaint, Plaintiff alleges that her son, Q.R., is a minor who resides in Kansas, and that, whilst in Kansas, Q.R. was "able to access" two pornographic websites that are owned and/or hosted by the "Defendants." (*See, e.g., id.* at ¶¶1, 28, 64-65).

The five counts are: Count 1: violations of the Age Verification Law, K.S.A. §50-6,146; Count 2: violations of the Kansas Consumer Protection Act ("KCPA") K.S.A. §50-623; Count 3: negligence; Count 4: negligence per se; and Count 5: violations of the Kansas Products Liability

---

[1] Because the case against ICF and ATG suffers from a threshold issue – lack of personal jurisdiction – we do not here raise several other legal issues with the Complaint. Those other issues include but are not limited to: ICF and ATG are immune from this lawsuit under Section 230 of the Communications Decency Act and the websites are not "products" within the meaning of the Kansas Products Liability Act.

Act ("KPLA") K.S.A. §60-3305. Although Plaintiff has brought five separate counts, the thrust of the Complaint regards the alleged violations of Kansas's Age Verification Law, which became effective July 1, 2024. (Dkt. 1 ¶16). Plaintiff claims that "Defendants" did not employ reasonable age verification measures on their websites, "resulting in those websites remaining freely open and accessible to anyone," and that therefore Q.R. "was able to access" the sites on a few occasions in September 2024 when he searched for pornography on his mother's old laptop that he found in a closet. (*Id.* ¶¶18, 62-65, 72).

Regarding personal jurisdiction, Plaintiff does *not* allege that any of the three Defendants have a place of business in Kansas; indeed, Plaintiff avers that ATG (which is claimed to own more than 10 percent of ICF stock) and ICF are incorporated in and have their principal places of business in the state of Washington; whereas Crakmedia is located and incorporated in Canada. (Dkt. 1 ¶¶2-3). Although none of the Defendants are alleged to have any presence in Kansas, Plaintiff avers that "Defendants" as a collective group are subject to this Court's personal jurisdiction because they engaged in business in Kansas by selling subscriptions and advertising, committed a tortious act within Kansas, expressly aimed the websites at Kansas citizens, and caused injury to Q.R. in Kansas. (*Id.* ¶¶8-11, 51-57).

## III.    Argument – This Court Lacks Personal Jurisdiction Over ICF and ATG

### A.    Standard of Review for the Personal Jurisdiction Inquiry in the Context of Merely Accessing a Website

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff must make a prima facie showing that the court has personal jurisdiction. *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). That showing must be made with respect to each claim alleged and with respect to each defendant. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020) (each claim); *Gould v. Wyse*, 2023 U.S.

App. LEXIS 20140, at *5 (10th Cir. Aug. 4, 2023) (each defendant). While all factual disputes are resolved in favor of the plaintiff, only well-pled facts are accepted as true; conclusory allegations must be ignored. *Gould*, 2023 U.S. App. LEXIS 20140, at *5; *accord Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

To obtain personal jurisdiction over a nonresident defendant in a diversity action in federal court, the plaintiff must show that jurisdiction is legitimate under the law of the forum state (here Kansas), and that the exercise of jurisdiction does not offend the Fourteenth Amendment's Due Process Clause. *Dental Dynamics*, 946 F.3d at 1228. In this case, Plaintiff contends that the exercise of specific personal jurisdiction is proper under various provisions of the Kansas long-arm statute, K.S.A. §60-308(b). More specifically, as noted *supra*, Plaintiff alleges that "Defendants" engaged in business in Kansas, committed a tortious act within Kansas, including under the KCPA, K.S.A. §50-638(a), and caused an injury to Plaintiff through an act or omission that took place outside of Kansas. (Dkt. 1 at ¶¶8-11).[2]

The Kansas long-arm statute is construed liberally to permit jurisdiction to the full extent permitted by due process; hence, this Court should proceed directly to whether the exercise of jurisdiction comports with constitutional Due Process.[3] *Old Republic*, 877 F.3d at 903; *Wingate*

---

[2]To the extent Plaintiff relies upon KCPA §50-638(a) to supply a basis for personal jurisdiction (*see* Dkt. 1 ¶8), it does not. By its plain language, it applies only to causes of actions arising from a "consumer transaction" engaged in by a "supplier" in Kansas. Plaintiff has not alleged that Q.R. purchased anything from ICF or ATG or otherwise engaged in a "consumer transaction" in Kansas. (*Id.* at ¶75, alleging only that "Defendants are deemed a supplier and Plaintiff is deemed a consumer" pursuant to K.S.A. §50-6,146(d)(1), which does not require a "consumer transaction," §50-6,146(d)(2)). *See also Kluin v. Am. Suzuki Motor Corp.*, 274 Kan. 888, 899-903 (Kan. 2002) (finding that plaintiff, who *inter alia* accessed Suzuki's website while in Kansas, failed to allege a tortious act within Kansas because he failed to allege a consumer transaction in Kansas under KCPA §50-638(a)).

[3]ICF and ATG do not concede that the individual subsections of the Kansas long-arm statute alleged in paragraphs 8-11 of the Complaint apply, but for purposes of this inquiry,

*v. Barkman Honey LLC*, 2020 U.S. Dist. LEXIS 10201, at *6 (D. Kan. Jan. 22, 2020).

Personal jurisdiction comports with Due Process where a defendant has purposefully established minimum contacts with the forum state, and where the exercise of personal jurisdiction over a nonresident would not offend "traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal citations and quotations omitted); *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020) (internal citations and quotations omitted).

The exercise of specific (as opposed to general)[4] personal jurisdiction is proper over a nonresident defendant when two prongs are met: (1) the defendant purposefully directed his activities at residents of the forum, and (2) the plaintiff's alleged injuries arise out of or relate to those activities. *XMission*, 955 F.3d at 840 (internal citations, quotations, and marks omitted). The purposeful direction requirement ensures that a defendant will not be haled into court as a result of random, fortuitous, or attenuated contacts or based on the unilateral activity of a plaintiff or third persons. *Walden*, 571 U.S. at 286. Indeed, the relationship must arise out of contacts defendant itself created with the forum; the unilateral activities of the plaintiff or a third party do not count. *Id.* at 284. The "inquiry…focuses on the relationship among the defendant, the forum, and the litigation…[and] the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 284, 285. The arising-out-of test meanwhile ensures an adequate nexus

---

because the long-arm statute is construed liberally to permit jurisdiction to the full extent permitted by Due Process, we do not address non-application of each individual subsection.

[4]Plaintiff alleges that both ICF and ATG are based in Seattle, Washington. (Dkt. 1 ¶¶2-3). There is no allegation that ICF or ATG are "essentially at home" in Kansas, *XMission*, 955 F.3d at 840, and thus Plaintiff appears to concede that ICF and ATG are not subject to the Court's general personal jurisdiction in Kansas.

between the forum and the claims at issue "regardless of the extent of a defendant's other activities connected to the forum." *XMission*, 955 F.3d at 840.

Several years ago, the Tenth Circuit appropriately recognized that the inquiry must be adapted for cases involving the Internet, including website operators and hosts, who are *not* subject to personal jurisdiction simply by virtue of operating their websites. *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011). As *Shrader* noted, if website operators/hosts and those who post to websites were subject to personal jurisdiction in each state in which the site's information is accessed, then the defense of personal jurisdiction no longer would exist because websites, by their very nature, can be accessed nationwide. *Id*. "[A] person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received." *Id.* (internal citations and quotations omitted). Similarly, "maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Id.* at 1241.

In cases involving the Internet, the focus of the inquiry therefore has been adapted to look at whether the website operator/host or poster of information intentionally directed its activities to the forum state and intended harm specifically in the forum state. *Id*. Thus, according to these principles, in *Shrader*, a defamation suit, the Tenth Circuit declined to exercise personal jurisdiction over both (a) the operator of the website forum on which an allegedly defamatory email about plaintiff was posted, and (b) the poster of the email. Regarding the operator, there was "no indication the [website] forum targeted an Oklahoma audience or the work of Oklahoma writers" rather the forum "drew an audience from all over the world." *Id.* at 1242. Regarding the poster of the offending email, the Court found that the only connection to Oklahoma was the fact that the plaintiff lived and worked there, and his suffering harm in the forum did not alone

establish personal jurisdiction over a defendant who did not purposefully direct his conduct to Oklahoma. *Id.* at 1244-1245.

Six years later, the Tenth Circuit further considered personal jurisdiction in the Internet context, but this time in a strict liability case, *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895 (10th Cir. 2017). There, the plaintiff, an insurance company, sued an aircraft parts manufacturer Continental Motors alleging strict tort liability for defective online manuals and bulletins following an aircraft crash. Relevant here, the insurance company argued that Continental Motors was subject to personal jurisdiction based on two theories, that it had exploited the Colorado market due to its website and sales to Colorado customers, and because of the harmful effects of the online manuals in Colorado. The Court rejected both arguments.

Regarding the plaintiff's "market exploitation" theory, the Court aptly noted that the plaintiff failed to demonstrate any targeted efforts to exploit specifically the Colorado market. *Id.* at 914-916. Regarding the "harmful effects" theory, the Court noted that this theory likely did not apply in a strict liability case, *id.* at 916 n.34, but even assuming it did, the plaintiff failed to show purposeful direction because Continental Motors' website and service manuals were not deliberately directed at Colorado, even though they had some Colorado customers. *Id.* at 917.

In 2020, the Tenth Circuit tackled an Internet-related case again. *XMission* held that a defendant internet service provider, Fluent, was not subject to personal jurisdiction in a case alleging that Fluent sent mass emails in violation of a federal CAN-SPAM Act. The plaintiff argued that Fluent should be subject to personal jurisdiction in Utah under the "harmful effects" and "market exploitation" theories, but the Tenth Circuit disagreed. The plaintiff failed to show that Fluent intentionally directed its conduct at Utah or that it knew that any recipient of the allegedly offending emails resided in Utah. 955 F.3d at 847-849. "Purposeful direction cannot be satisfied if the website host, web poster, or email sender simply wants as many responses as

6

possible but is indifferent to the physical location of the responder." *Id.* at 847. The market exploitation theory also failed because any advertising was not Utah-focused, and, although Fluent received $3 million in revenue from Utah customers during the relevant period, the alleged injuries did not arise out of or relate to that revenue. *Id.* at 849-850.

Following these authorities, this Court and others within this Circuit likewise have found personal jurisdiction lacking in both intentional tort and strict liability lawsuits involving alleged injury resulting from an in-forum plaintiff merely accessing a website.

*Loudermill v. Brattin*, 2024 U.S. Dist. LEXIS 190779 (D. Kan. Oct. 21, 2024), is one such example. There, a Missouri State Senator posted a picture of the plaintiff and a caption on his X social media account, which was accessible nationwide. The plaintiff filed a false light suit against the Senator, who moved to dismiss on personal jurisdiction grounds. The Court granted the motion because the plaintiff could not "show that Defendant expressly aimed his social media post at the state of Kansas." *Id.* at *6.

> Although Defendant's post was very likely viewed by some Kansas residents, the post was not intended to target an audience in Kansas which would provide a ground for personal jurisdiction…. Defendant did not even know that Plaintiff was a resident of Kansas….
>
> This is an important distinction, as the Tenth Circuit has held that in the internet era, "it is necessary to adapt the analysis of personal jurisdiction . . . by placing emphasis on the internet user or site intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011). The Tenth Circuit went on to say, "merely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed." *Id.* at 1244. This means that "[p]osting on the internet from [outside the forum state] an allegedly defamatory statement [about a forum resident] . . . does not create the type of substantial connection between [the poster] and [the forum state] necessary to confer specific personal jurisdiction." *Id.* … Thus, an electronic communication does not automatically provide personal jurisdiction in every state where it can be seen, but instead needs to target a specific audience.

*Id.* at *7-8.

There are multiple similar examples. *See also, e.g., Temple v. Ghadimi*, 2023 U.S. Dist. LEXIS 12060, at *11-13 (D. Kan. Jan. 24, 2023) (finding that a defendant's Facebook page containing allegedly defamatory statements about the Kansas plaintiff did not subject defendant to personal jurisdiction in Kansas because defendant's post was on an Internet forum available nationwide; "the only connection to Kansas…is that Plaintiffs are *located* in Kansas and conduct business *from* there" which is insufficient) (emphasis in original); *Fitn40, LLC v. Glanbia Nutritionals (Ir.) Ltd.*, 2022 U.S. Dist. LEXIS 3726 (D. Utah Jan. 7, 2022) (in trademark infringement action against a nutritional supplement company, which sold the allegedly infringing products on its website, dismissing for lack of personal jurisdiction because defendant's website was not forum-directed but rather targeted a nationwide audience, and there was no other related purposeful availment of Utah); *Sebo Am., LLC v. Azar*, 2021 U.S. Dist. LEXIS 34245, at *13-14 (D. Colo. Feb. 24, 2021) (noting that "the operation of a website alone, even one that allows individuals located in Colorado to obtain products, is insufficient to establish personal jurisdiction" and collecting cases); *Ubel v. Progressive Direct Ins. Co.*, 2020 U.S. Dist. LEXIS 213414, at *23-36 (D. Colo. Oct. 22, 2020)[5] (in insurance dispute based on an erroneous report obtained by a Colorado resident through a nationwide interactive website, finding personal jurisdiction lacking because any Colorado contacts were fortuitous based on zip codes entered by users in defendant's database and not by any conduct directed at Colorado more than any other state); *Great Divide Brewing Co. v. Gold Key/PHR Food Servs., LLC*, 127 F. Supp. 3d 1137, 1144-1145 (D. Colo. 2015) (in trademark infringement action, finding lack of personal jurisdiction over restaurant that used infringing phrases on its website through which

---

[5] *See also Ubel v. Progressive Direct Ins. Co.*, 2020 U.S. Dist. LEXIS 212329 (D. Colo. Nov. 13, 2020) (adopting recommendation of magistrate judge to grant the motion to dismiss for lack of personal jurisdiction).

Colorado business was solicited; any Colorado contacts made via the website did not result "because of some effort by Defendant to purposefully reach out to Colorado through marketing efforts or otherwise").

### B.    Q.R.'s Own Conduct Cannot Supply Personal Jurisdiction

Based on the above-cited authorities, Plaintiff's case must be dismissed for lack of personal jurisdiction. Even accepting the Complaint's allegations as true, Plaintiff has alleged at most that, based on Q.R.'s own searches, he was able to access websites in the forum and accordingly suffered injury in the forum. These sorts of allegations form the paradigmatic model for a complaint that *fails* to allege purposeful direction.

Specifically, Plaintiff alleges that Q.R. "found" an "old laptop" in a "closet" and the laptop belonged to an adult, his mother, who had "stored" it in the closet "a couple of years ago" and "forgotten about it." (Dkt. 1 at ¶62). Plaintiff goes on to allege that Q.R. then surreptitiously used his mother's "old laptop," and in doing to, had "unfettered access to the internet[.]" (*Id.* at ¶63). Q.R. then took it upon himself to "search[] for pornography" and "[t]hrough this process…was able to access" the websites on seven instances over the course of three separate days. (*Id.* at ¶¶63-65). Thus, according to Plaintiff's own allegations, it was Q.R. himself who actively sought out websites that might contain pornography and as a result of *his* search was merely "able to access" the sites at issue here.

As *Shrader* and *Old Republic* and progeny made clear, website operators who maintain websites do not subject themselves to jurisdiction in a forum merely because a website "can be accessed by residents of the forum state." *Shrader*, 633 F.3d at 1240-1241. *See also Old Republic*, 877 F.3d at 904-918 (no personal jurisdiction in strict liability case where plaintiff merely accessed allegedly defective online manuals in the forum). *Accord Loudermill*, 2024 U.S. Dist. LEXIS 190779 at *11-13 (in false light suit, no personal jurisdiction over defendant who

posted about plaintiff on an X social media account, which was accessible nationwide); *Temple*, 2023 U.S. Dist. LEXIS 12060, at *12 (no personal jurisdiction over defendant for posting allegedly defamatory remarks on a nationally available Internet forum; "the only connection to Kansas …is that Plaintiffs are *located* in Kansas and conduct business *from* there").

Because mere access in Kansas is all that has been alleged here, the case against ICF and ATG should be dismissed for want of personal jurisdiction. *See Huffman v. Blue Compass RV, LLC*, 2024 U.S. Dist. LEXIS 100849, at *12 (D. Kan. June 6, 2024) ("The only connection with Kansas is Plaintiff. That is not sufficient").

### C.     Plaintiff's Attempts to Substantiate Personal Jurisdiction Based on ICF and ATG's Supposed Conduct Must Fail

Specific personal jurisdiction as to ICF and ATG is lacking despite Plaintiff's allegations in a section of the Complaint titled "Defendants Target Kansas Citizens." (Dkt. 1 at p.13-15, ¶¶51-57). In that section, Plaintiff includes allegations apparently seeking to establish that "Defendants" targeted Kansas as a market and expressly aimed their sites at Kansas citizens. The allegations are, however, insufficient to do so under well established Tenth Circuit precedent.

*Paragraph 51.* The first allegation in this section is that "Defendants" as a collective group "do a substantial amount of business in Kansas" via the websites by "selling subscriptions to Kansas Citizens and directing "advertisements to Kansas Citizens." (Dkt. 1 ¶51). Even if these market-related allegations about "Defendants" are true, there is zero allegation that Q.R. purchased a subscription or that his "access" of the websites arose from any targeted advertisement that he viewed and that was directed to Kansas. In fact, Plaintiff alleged quite the opposite. Plaintiff alleges that Q.R. found an old computer, logged on, searched out pornography on the Internet, and, based on *his own searches*, "was able to access" the sites. *See XMission*, 955 F.3d at 849-850 (holding that market exploitation theory failed; even though defendant had $3

million in revenue from Utah customers during the period when certain offending emails were sent, plaintiff failed to allege that the offending emails arose out of or related to the revenue or any advertising done by defendant). *See also Kluin*, 274 Kan. at 897-898 (finding that, even if Suzuki Motors had transacted some business in Kansas, plaintiff's claim arose from his unilateral activity and not from a Kansas sales transaction with Suzuki; therefore the "transacting business" subsection of the Kansas long-arm statute was not applicable). Because Plaintiff fails to aver that any of the "subscriptions" sold to and advertisements directed to Kansas persons had any relation to Q.R.'s supposed injuries, these supposed contacts are not relevant to the specific personal jurisdiction inquiry.

*Paragraph 52.* Plaintiff's allegation that "Defendants have expressly aimed" the websites "at Kansas citizens, including Plaintiff" also does not establish jurisdiction. (*See, e.g.*, Dkt. 1 ¶52). In so alleging, Plaintiff apparently tries to invoke the "harmful effects" test, but that test applies in the context of intentional torts (such as defamation) and not in the context of the sorts of strict liability and internet-based negligence torts raised here. *See Old Republic*, 877 F.3d at 916 n.34 (noting that the "harmful effects" theory established by the Supreme Court in the defamation context does not apply to claims of untargeted negligence, let alone strict products liability); *see also Sims Glob. Sols., LLC v. Specialized Shipping, LLC*, 2024 U.S. Dist. LEXIS 47161, at *10 (D. Kan. Mar. 18, 2024) ("The Tenth Circuit has not extended the 'harmful effects' theory of purposeful direction to cases involving unintentional torts. By suing for a negligence-based tort, Plaintiff does not allege that Defendant intentionally caused its injury. This makes it impossible for the Court to infer that Defendant purposefully directed its tortious conduct towards Kansas, knowing that the injury would be felt in the forum"); *Butler v. Daimler Trucks N. Am.*, 2020 U.S. Dist. LEXIS 148739, at *18-21 (D. Kan. Aug. 18, 2020) (noting that the "harmful effects" theory did not apply in the context of alleged unintentional torts such as

negligent design defect and strict product liability, and holding that, in any event, plaintiff failed to show anything more than mere harm to a Kansas resident, which was insufficient).

Even assuming the "harmful effects" test could apply here, Plaintiff has failed to allege that ICF and ATG deliberately directed the websites *specifically* at Kansas or that they *specifically* intended to harm Q.R. Without those elements, there is no personal jurisdiction under the "harmful effects" theory. *See, e.g., Shrader*, 633 F.3d at 1240-41 (maintenance of a website does not subject its owner or operator to personal jurisdiction simply because the site is accessible by the forum's residents; there must be deliberate direction to the forum state and intended harm to the plaintiff in the forum); *Loudermill*, 2024 U.S. Dist. LEXIS 190779, at *6 ("there was no such specific targeting or express aiming at the state of Kansas. Although Defendant's post [on X] was very likely viewed by some Kansas residents, the post was not intended to target an audience in Kansas"); *Ubel*, 2020 U.S. Dist. LEXIS 213414, at *34 ("harmful effects" test not met where plaintiff failed to allege that a nationwide website targeted Colorado to a greater degree than other states).

*Paragraphs 53-57.* Plaintiff makes several allegations regarding content delivery network ("CDN") providers, whose networks are "organized into strategically placed points of presence ("PoPs") in high traffic internet areas worldwide" using a method whereby the CDN replicates websites' content in "copies across its global network of PoPs" and places "these copies in edge servers geographically closer to users[.]" (Dkt. 1 ¶¶54-55). Plaintiff alleges that "Defendants have "contracted with" CDN provider Amazon CloudFront to "enhance the speed and performance" of a website for Kansas users "through edge servers in Kansas City, Missouri" (though not in Kansas). (*Id.* ¶¶53, 57).

These allegations are a red herring; the contacts of third parties are not jurisdictionally significant. *See Walden*, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the

defendant-focused minimum contacts inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State") (internal citations, quotations, and marks omitted). Rather, a plaintiff must establish that the defendant *itself* established sufficient contacts with the forum state and singled out that forum. *See id.* at 284-286; *C5 Med. Werks v. CeramTec GmbH*, 937 F.3d 1319, 1323-1324 (10th Cir. 2019) (holding that engagement in commercial promotion in the forum state when the location of the promotion is determined by third parties and not by defendant constitutes a fortuitous contact, not purposeful availment). *See also Wingate*, 2020 U.S. Dist. LEXIS 10201 at *10 (finding that plaintiff could not rely on the contacts of a "member" entity to establish that the defendant was subject to personal jurisdiction).

Moreover, here, even assuming Amazon Cloudfront's contacts were relevant to this inquiry, Plaintiff does not allege that Amazon CloudFront was hired specifically to enhance any website's speeds and performance particularly in Kansas. According to the Complaint, the entire point of engaging a well-known CDN provider such as Amazon CloudFront is to enhance speed and performance not in one geographic location but *everywhere* to enable "faster and more reliable communication" for users "worldwide." (Dkt. 1 ¶54; *see also id.* at ¶55, alleging a CDN's "global network"). This is supported by Amazon CloudFront's own marketing materials, which tout that, an entity which engages Amazon CloudFront for its CDN services will receive the use of edge servers not just in one location, but in all the locations nationwide where Amazon CloudFront has placed its edge servers and embedded PoPs. (*See* Exhibit A); (*see also* the article referenced in Dkt. 1 n.22, "What is a CDN?", which notes that "today the majority of web traffic is served through CDNs, including traffic from major sites like Facebook, Netflix, and Amazon" to maximize speed and performance for persons across the nation and globally.) *See also Fitn40*, 2022 U.S. Dist. LEXIS 3726, at *24 (finding no targeting of Utah where defendant's website included hyperlinks to nationwide third-party vendors, such as Walmart, in Utah where Utah

residents could purchase allegedly infringing products).

**D.** **Plaintiff's Improper Group Pleading Fails to Establish Personal Jurisdiction Over ATG and ICF Under Any Theory**

In addition to the lack of purposeful direction and lack of relevant minimum contacts as discussed just above, Plaintiff's improper group pleading provides this Court with another basis on which to dismiss ICF and ATG from this suit for lack of personal jurisdiction.

Plaintiff contends that the three Defendants are separate entities, namely (a) Crakmedia which is allegedly the doing-business-as name of 4355768 Canada, Inc. (Dkt. 1 ¶4); (b) ICF (*id.* at ¶2; and (c) ATG, which is alleged to own "more than 10% of ICF's stock." (*Id.* at ¶3). Despite these allegations, in multiple paragraphs of the Complaint – including in the paragraphs purporting to allege personal jurisdiction – Plaintiff refers to "Defendants" (to include ICF, ATG, and Crakmedia) as an undifferentiated collective. (*See, e.g., id.* ¶¶8-11, 51-60). Group pleading of this sort is improper and insufficient to establish personal jurisdiction over a particular defendant.

The Supreme Court has made clear that personal jurisdiction requirements must be met for *each* defendant. *Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *accord Gould*, 2023 U.S. App. LEXIS 20140, at *5. Where, as here, a complaint uses group pleading by referring to "Defendants" as a monolith, personal jurisdiction is not established against them under any theory. *See Abney v. Philip Morris USA*, 2024 U.S. Dist. LEXIS 37640, at *16-17 (D. N. Mex. Mar. 4, 2024) (so holding and citing cases). *Accord Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 396-397 (S.D.N.Y. 2021). *See also GCIU-Employer Ret. Fund v. Coleridge Fine Arts*, 700 Fed. Appx. 865, 869 (10th Cir. 2017) (mere stock ownership or corporate affiliation is not a sufficient contact for purposes of the personal jurisdiction analysis).

In sum, based on well established authorities and because Plaintiff has alleged only that

Q.R. was able to access websites in Kansas and suffered injury as a result thereof and otherwise used improper group pleading, ICF and ATG are not subject to the personal jurisdiction of this Court and accordingly the entire case against them should be dismissed.

## IV.    Conclusion

For the foregoing reasons, ICF and ATG ask that the lawsuit against them be dismissed.

DATED:        July 3, 2025                    Respectfully submitted,

KENNYHERTZ PERRY LLC


_____/s/ Braden Perry_____
Braden Perry, KS #21022
2000 Shawnee Mission Pkwy, Suite 210
Mission Woods, Kansas 66205
Phone: (816) 527-9447
Fax: (855) 844-2914
braden@kennyhertzperry.com

William Coffield (admitted *pro hac vice*)
Laina Lopez (admitted *pro hac vice*)
BERLINER, CORCORAN & ROWE, LLP
1101 17th Street, N.W., Suite 1100
Washington, D.C. 20036
Phone: (202) 293-5555
wcoffield@bcrlaw.com
llopez@bcrlaw.com

*Attorneys for ICF Technology, Inc. and Accretive Technology Group, Inc.*

15

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 3rd day of July 2025, the foregoing was electronically filed with the

Clerk of the Court by using the Court's e-filing system which served notification of electronic filing to counsel for all parties of record.

_/s/ Braden Perry_
Braden Perry

16