MANN WYATT TANKSLEY
201 E 1st Ave.
Hutchinson, KS 67501
(620) 662-2400
(620) 662-2443 (Fax)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Q.R. a minor, by and through his natural mother and next friend JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>ICF TECHNOLOGY INC.; ACCRETIVE TECHNOLOGY GROUP, INC.; and 4355768 CANADA INC. D/B/A CRAKMEDIA NETWORK.<br><br>Defendants. | Case No.: 6:25-cv-01093 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS ICF TEHCNOLOGY INC AND ACCRETIVE TECHNOLOGY GROUP, INC.'S MOTION TO DISMISS BASED ON PERSONAL JURISDICTION**

This is Plaintiff Q.R.'s response in opposition to Defendants ICF Technology Inc. and Accretive Technology Group, Inc.'s (collectively "Defendants") Motion to Dismiss and Memorandum in Support, brought by and through his natural mother and next friend, Jane Doe. The issues before this Court are straightforward:

1. **Has Plaintiff adequately alleged purposeful direction sufficient to support specific personal jurisdiction?** The answer is *yes*. Defendants operate highly interactive and profit-driven websites designed to attract, engage, and monetize Kansas traffic. They further target Kansas users through geo-location tools and use of a CDN to optimize performance in this forum. Even though they may targe other forums in addition to Kansas, *Defendants cannot reasonably expect to be everywhere for profit, but nowhere for accountability.* Accordingly, Defendants have purposefully directed their commercial activities at Kansas and availed themselves to its jurisdiction.

Page 1 of 17

2. **Do Plaintiff's claims arise from Defendants' in forum activities?** The answer is *yes*. Plaintiff's injuries flow directly from Defendants' in forum contacts. Plaintiff accessed their sites in this state, and plaintiff was harmed by this access. The nexus between these in forum contacts and Plaintiff's harm is clear.

3. **Are there any other impediments to this case moving forward?** The answer is *no*. Exercising personal jurisdiction in this case is reasonable. This court has jurisdiction over all of Plaintiff's claims. And Plaintiff's group pleadings give Defendants fair notice of the claims against them. Thus, nothing bars this case from proceeding.

## STANDARD OF REVIEW

To survive a motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. *Rainy Day Books, Inc. v. Rainy Day Books & Cafe, L.L.C.,* 186 F. Supp. 2d 1158, 1160 (D. Kan. 2002). In considering whether a plaintiff has made a prima facie showing of personal jurisdiction over a defendant, the allegations the plaintiff's complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *Behagen v. Amateur Basketball Ass'n. of U.S.A.,* 744 F.2d 731, 733 (10th Cir.1984). "In order to defeat the plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Rainy Day Books*,186 F.Supp.2d at 1160. In this case, Plaintiff has alleged specific, unrebutted facts that establish a prima facie showing of personal jurisdiction over Defendants, sufficient to defeat their Rule 12(b)(2) motion.

## ARGUMENTS AND AUTHORITIES

I. **Plaintiff has Alleged Facts Sufficient to Establish a Prima-Facie Showing of Specific Personal Jurisdiction.**

Before this case can proceed, this Court must determine whether it has personal jurisdiction over Defendants. *Stafford v. Jankowski*, 338 F. Supp. 2d 1225, 1227 (D. Kan. 2004). To establish

personal jurisdiction, a plaintiff must satisfy both the Kansas long-arm statute and the requirements of constitutional due process. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). Because Kansas's long-arm statute is interpreted broadly and extends to the limits of federal due process, the pertinent analysis focuses solely on whether exercising jurisdiction would offend due process.[1] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998). Due process permits a federal court to exercise jurisdiction over a non-resident defendant where the defendant has established "minimum contacts" with the forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). These minimum contacts may support either general or specific jurisdiction. *OMI Holdings*, 149 F.3d at 1090–91. In the present case, Plaintiff's claims are premised on this Court exercising specific jurisdiction over the Defendant.

"Specific jurisdiction . . . is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1078 (10th Cir. 2008). Thus, specific jurisdiction exists when (1) the defendant has purposefully directed its activities at the forum state, and (2) the plaintiff's claims arise out of or relate to those activities. *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221–22 (10th Cir. 2021) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Here, both elements are met. The Complaint alleges facts demonstrating purposeful direction on part of

---

[1] In a footnote, Defendants argue that the Complaint insufficiently establishes personal jurisdiction under K.S.A. § 50- 638(a) as "Plaintiff has not alleged that Q.R. purchased anything from ICF or ATG or otherwise engaged in a "consumer transaction" in Kansas." *See* Doc. 31 at 3 n.1. They have forfeited this argument by making it in a footnote. *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (en banc) ("**Arguments raised in a perfunctory manner, such as in a footnote, are waived**.") (emphasis added). It is worth noting, however, that K.S.A. § 50-6,146(c) holds: "Any violation of this section is an unconscionable act and practice under the Kansas consumer protection act." Section (d)(1)-(2) further holds: "For purposes of the remedies and penalties provided by the Kansas consumer protection act: (1) The person alleging a violation of this section shall be deemed a consumer, and the commercial entity that violates this section shall be deemed the supplier; and (2) proof of a consumer transaction shall not be required." Thus, as Plaintiff has alleged multiple violations of K.S.A. § 50-6,146, he has sufficiently invoked K.S.A. § 50- 638(a).

Defendant, and Plaintiff's injuries arise directly from that in forum conduct. Thus, Plaintiff's allegations easily establish a prima facie showing of specific personal jurisdiction over Defendants.

### a. Defendants Have Purposefully Directed Their Activities at Kansas Residents Under Both the Zippo and Shrader Tests.

When analyzing whether a defendant's internet activity manifests purposeful direction sufficient for a finding of specific jurisdiction, courts in this Circuit have invoked either the *Zippo* sliding scale test or the *Shrader* test. *See Parah, LLC v. G' Strat LLC*, No. 2:13cv756, 2014 U.S. Dist. LEXIS 17219, at *9 (D. Utah Feb. 7, 2014); *see also Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011). In the present case, Plaintiff has made a prima facie showing of personal jurisdiction under both frameworks.

#### i. Plaintiff has demonstrated purposeful direction under Zippo, as Defendant's are "clearly doing business over the internet."

While not expressly adopted by the Tenth Circuit, courts within the Circuit have consistently applied the *Zippo* "sliding scale" framework to assess whether a website has purposefully directed its activities toward a particular forum. *Parah,* 2014 U.S. Dist. LEXIS 17219, at *9. Under this analysis, passive websites that merely provide information to users do not give rise personal jurisdiction, whereas sites that are "clearly doing business over the internet" establish purposeful direction. *Id.* Whether a site is "clearly doing business" turns on "the level of interactivity and commercial nature of the exchange of information that occurs on the website." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123–24 (W.D. Pa. 1997). In creating this test, the *Zippo* court reasoned "[t]raditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper." *Id.* citing *Burger King,* 471 U.S. at 475. Thus "[d]ifferent results should not be reached

simply because business is conducted over the Internet." *Id*. applying *Compuserve, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir. 1996).

The District of Kansas most notably applied this reasoning in *Rainy Day Books.* There, the court found the defendant's website was "clearly doing business over the Internet," as it possessed multiple interactive commercial features which allowed users to subscribe to email lists, access gift certificate information, and purchase books through a third-party service. *Rainy Day Books*, 186 F. Supp. 2d at 1164–65. Accordingly, the website's commercial nature and accessibility in Kansas gave rise to purposeful direction, supporting the exercise of specific personal jurisdiction for harms arising from that activity. *Id*. While the defendant argued that any Kansas transactions on the site were manufactured by the plaintiff, and thus could not support personal jurisdiction, the court disagreed, relaying the key inquiry was whether the defendant's website, by its own design, enabled Kansas residents to engage in commercial transactions. *Id*. at 1165. Thus, because the defendant intentionally operated a site that both committed a wrong in Kansas and enabled commercial transactions with Kansas residents, the court held that it had purposefully availed itself to the forum. *Id*. The fact that some purchases were facilitated by the plaintiff was immaterial; those actions merely confirmed that the website functioned as intended and was capable of causing harm in Kansas. *Id*. at 1164–65.

Tenth Circuit courts have repeatedly applied this precedent in making findings of specific personal jurisdiction. *See Ceva Animal Health, LLC v. Leetronics Corp.*, No. 2:23-cv-02081-HLT-KGG, 2023 U.S. Dist. LEXIS 104747, at *11 (D. Kan. June 16, 2023) (H. Teeter, J.) (citing *Rainy Day Books* to find specific jurisdiction where defendants sold infringing products through an interactive Amazon storefront to Kansas residents); *Parah*, 2014 U.S. Dist. LEXIS 17219, at *10 ("Just as the court found in *Rainy Day Books*, this court finds Defendant is clearly doing business

over the internet. Defendant has purposely set up a website providing for a high level of interactivity, which encourages customers to access its website to purchase the Accused Products."); *Del Sol, L.C. v. Caribongo, L.L.C.*, No. 2:11CV573DAK, 2012 U.S. Dist. LEXIS 20542, at *10 (D. Utah Feb. 17, 2012) ("As in *Rainy Day Books*, the court finds that Caribongo is clearly doing business over the internet. Caribongo has purposefully set up a website providing for a high level of interactivity, which encourages customers to access its website to purchase products.").

Underlying these court's decisions to apply this test is the simple, yet compelling notion that "**[s]ellers cannot expect to avail themselves of the benefits of the internet-created world market that they purposefully exploit and profit from without accepting the concomitant legal responsibilities that such an expanded market may bring with it**." *Leach v. Pharmedoc Inc.*, 2017 U.S. Dist. LEXIS 33565, at *4 quoting *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 820 (E.D. Mich. 2006) (emphasis added).

In the present case, Plaintiff has clearly alleged facts demonstrating that Defendants are "clearly doing business over the Internet" through the intentional operation of their websites. First, Plaintiff alleges that "Defendants do a substantial amount of business in Kansas through jerkmate.com and/or jerkmatelive.com as they engage in selling subscriptions to Kansas citizens and direct advertisements to Kansas citizens." *See* Doc. 1, Pl.'s Compl., ¶ 51. This is supported by Plaintiff's repeated ability to access the websites from Kansas. *See Id*. ¶¶ 64–65.

The complaint further alleges Defendants' websites exhibit a high level of interactivity and an unmistakable commercial purpose. Users are encouraged to create profiles, sell content, purchase subscriptions, and interact with webcam performers through chat and video features. *See Id*. ¶¶ 48–53, 97–98. Defendants are not merely passive conduits for third-party material. Rather,

they actively curate and shape their website's content by assigning tags and categories, suggesting searches, and providing guidance to performers, demonstrating direct involvement in the development and promotion of the material. *See Id*. ¶¶ 30–32. Indeed, these actions serve to increase user engagement and drive sales. Defendants openly promote the interactive nature of their sites, claiming to offer "the most interactive, entertaining, addictive, technically advanced adult chat on the web." *See Id.* ¶ 45. They have even developed an AI bot named "Jerky!" to aid user experience, and have created an interactive sex game to further increase user participation. *Id*. ¶¶ 40-46.

Given Plaintiff's ability to access these features from Kansas, and the websites' deliberate design to encourage commercial interaction with users, Defendants are "clearly doing business over the Internet" and have "purposefully directed" their activities towards Kansas residents under the *Zippo* test as applied by *Rainy Day Books*.

> ii. Plaintiff has demonstrated purposeful direction under the Shrader test.

Despite the *Zippo* sliding-scale's frequent and enduring use, a Tenth Circuit appellate court expressly declined to adopt it as the definitive standard for evaluating personal jurisdiction in internet cases. *Shrader v. Biddinger*, 633 F.3d 1235, 1242 n.5 (10th Cir. 2011). Rather, the *Shrader* court favored a "*Calder-derived*" framework for analyzing purposeful direction in the online context. *Id.* at 1241. Under *Calder*, purposeful direction towards a forum may be established in the absence of continuing relationships or market exploitation when an out-of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state. *Calder v. Jones,* 465 U.S. 783, 791, 104 S. Ct. 1482 (1984). The Tenth Circuit has distilled this framework into a three-part test requiring: (1) an intentional act, (2) expressly aimed at the forum

state, and (3) with knowledge that the brunt of the injury would be felt in that forum. *Dudnikov*, 514 F.3d at 1072.

Consistent with this approach, the *Shrader* court held that satisfying the *Zippo* test may establish the "intentional act" prong, but courts must also determine whether the defendant's internet activity was expressly aimed at the forum. *ClaimSolution, Inc. v. Claim Solutions*, LLC, No. 17-2005-JWL, 2017 U.S. Dist. LEXIS 101907, at *8 (D. Kan. June 30, 2017) (applying *Shrader*). At the pleading stage, if both elements are met, purposeful direction will be established. *Newsome*, 722 F.3d at 1269 (noting that when the first two *Calder* elements are met, courts may presume the defendant knew the harm would be felt in the forum).

For instance, in *XMission, L.C. v. PureHealth Rsch.*, the Tenth Circuit Court of Appeals, applying *Shrader*, reversed a Rule 12(b)(2) dismissal after finding that the defendant had purposefully directed electronic activity into Utah by sending over 600 promotional emails to individuals it knew were Utah residents. 105 F.4th 1300, 1310 (10th Cir. 2024). Although the emails were part of a much larger nationwide marketing effort, and the plaintiff's had "opted into" receiving the emails, jurisdictional discovery revealed the defendant maintained a database tying recipients' email addresses to their physical and IP addresses. *Id.* at 1310. As a result, it was undisputed that the defendant knew its emails were reaching individuals in Utah.[2] The court found this fact "fatal" to the defendant's appellate position, as such knowledge demonstrated the defendant had "directed its conduct at the forum state." *Id*. Thus, even broadly disseminated internet conduct can support specific jurisdiction where the defendant knows its actions are reaching individuals in the forum state.

---

[2] The court found this fact created a distinction from *XMission L.C. v. Fluent LLC*, 955 F.3d 833 (10th Cir. 2020), where the facts did not show that the defendant knew any email recipients resided in Utah. *See XMission*, 105 F.4th at 1306.

In the present case, Plaintiff alleges that Defendants' websites utilize geo-targeting features to control and tailor their content distribution based on the viewer's location. They openly admit that their websites "respect the geotargeting and other limitations initially imposed by the model," thereby ensuring that content is displayed in accordance with a user's geographic location. *See* Doc. 1, Pl.'s Compl., ¶ 27. This level of technical targeting is not incidental. It demonstrates that Defendants intentionally configure their platforms to identify users by location and deliver content accordingly. Such conduct directly supports the added element of the *Shrader* test, as it shows Defendants knowingly direct electronic activity into Kansas. Thus, just as in *XMission*, where the defendant's use of IP and physical address data evidenced purposeful direction, Defendants' implementation of geo-targeting confirms that they know their content reaches users in Kansas and have designed their system to make that happen.

While this allegation alone supports a finding that Defendants purposefully directed their conduct toward Kansas, the Plaintiff's complaint goes further. Plaintiff alleges that Defendants have contracted with Amazon CloudFront, a content delivery network (CDN), to improve the speed and reliability of their websites specifically for users in and around Olathe, Kansas. *See* Doc. 1, Pl.'s Compl., ¶¶ 53–58. This demonstrates that Defendants deliberately took steps to enhance the performance and user experience of their websites for Kansas residents. *See Id*. ¶¶ 53, 55. This use of CDNs is not incidental. For websites that stream high-definition adult content, a CDN is essential to delivering smooth, uninterrupted playback. *See Id*. ¶ 55. Website operators know that delays or buffering reduce engagement, particularly on platforms built around real-time interaction. *See Id*. ¶ 56. Plaintiff alleges that Defendants' CDN edge server is located in Kansas City, Missouri, less than 25 miles from Plaintiff's residence, further supporting a finding that Defendants sought to target and serve users in this forum. *See Id*. ¶ 57.

While the Tenth Circuit has not touched on the issue of a website's use of CDNs within the purposeful direction context, the Ninth Circuit has tackled this very issue on multiple occasions, consistently finding that a defendant's use of CDN's establishes purposeful direction. *See e.g. Doe v. WebGroup Czech, A.S.*, 93 F.4th 442 (9th Cir. 2024) (overruled on other grounds)[3] (finding the defendants "showed purposeful direction [through the] use of U.S.-based content delivery network services to improve the viewing experience of U.S. visitors[.]"); *Will Co. v. Ka Yeung Lee*, 47 F.4th 917 (9th Cir. 2022) (overruled on other grounds)[4] (finding purposeful direction where defendants, among other factors, made the choice to purchase content delivery network services for North America, which made the site load faster for viewers in that region). This line of authority makes clear that a defendant's purposeful decision to enhance website performance for users in a particular forum is sufficient to establish express aiming. Here, Defendants attempt to counter this reasoning with two arguments.

First, they cite to a plethora of case law, corroborating the notion that Plaintiff cannot rely on the contacts of a third party to satisfy specific personal jurisdiction. *See* Doc. 31 p.12-13. This argument is not compelling. Indeed, the *WebGroup* and *Will* courts did not base their findings of personal jurisdiction on the plaintiff's contact with a CDN. Instead, their analysis focused on the defendants' deliberate choice to purchase CDN services that improved website performance for users in a particular forum. *See WebGroup*, 89 F.4th at 1200 ("[the defendants' purchase of U.S.-based CDN services to ensure faster website loading times and a more seamless viewing experience for U.S. users]... constitutes express aiming at the U.S. market"); *Will Co.*, 47 F.4th at 925 (defendants "chose to purchase CDN services for North America," which made the site load

---

[3]*See Briskin v. Shopify*, Inc., 135 F.4th 739, 757 n.15 (9th Cir. 2025) (Holding: "*Will Co.*'s and [*Webgroup's*] holdings that personal jurisdiction existed on the facts in those cases remain valid…").
[4]*See* FN3.

faster for viewers in the U.S. and slower elsewhere). Here, it was Defendants who selected Amazon CloudFront to serve their content, and thus demonstrating purposeful direction by their own actions.

Defendants' second argument fares no better. They essentially argue that they do not expressly aim their conduct at Kansas. Instead, they contract and operate nationwide and are thus agnostic as to the location in which users access their websites. *See* Doc. 31 p. 13; *See also* Doc. 31-1. However, the Supreme Court has expressly rejected such reasoning. A company that targets a national market cannot claim to be jurisdictionally nowhere simply because it is everywhere. *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 355, 363 (2021) (holding that specific jurisdiction exists when a company serves a market in the forum state and its product causes harm there, even if the company operates nationally). Accordingly, "**express aiming does not require differential targeting**." *See Briskin v. Shopify, Inc.*, 135 F.4th 739, 757 (9th Cir. 2025) (citing *Ford*, 592 U.S. at 363) (emphasis added). Instead, a commercial website that does "something more" to exploit a national market cannot avoid jurisdiction in states where they profit from consumers. *Id*. Thus, Defendants cannot shield themselves from jurisdiction in Kansas simply by claiming to have nationwide reach when their own conduct clearly demonstrates a deliberate effort to serve and profit from this forum.

In sum, Plaintiff alleges specific, well-supported facts demonstrating how Defendants have purposefully directed their commercial internet activities at Kansas residents. Whether analyzed under the *Zippo* sliding scale or the *Shrader* test, Defendants' operation of highly interactive commercial websites, their use of geo-targeting features, and their deployment of a CDN located near Plaintiff's residence all point to deliberate efforts to serve and profit from the Kansas market. These allegations are more than sufficient for this Court to make a finding of purposeful direction.

### *b. Plaintiff's Injuries Clearly Arise from Defendants' Purposeful Forum Contacts.*

The second requirement for specific personal jurisdiction simply requires a nexus between the defendant's forum-related contacts and the plaintiff's cause of action. *Rainy Day Books*, 186 F. 2d at 1166, citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 122 (1987). Here, Plaintiff's injuries plainly arise out of or relate to his access to Defendants' website while in the state of Kansas. *See* Doc. 1, Pl.'s Compl., ¶¶ 51 to 67. That access was made possible only because of Defendants' purposeful contacts with this forum. The connection is obvious.

However, rather than address their own conduct, Defendants attempt to deflect by focusing on Plaintiff's actions. *See* Doc. 31, Section III.B. But jurisdictional analysis centers on the defendant's conduct, not the plaintiff's. *See XMission*, 105 F.4th at 1310. Here, Plaintiff has specifically alleged that Defendants directed adult content to Kansas residents, conducted commercial activity within this forum, and ignored Kansas's age verification laws. These acts and omissions directly caused Plaintiff's harm. *See* Doc. 1, Pl.'s Compl., ¶¶ 51 to 67. Thus, Plaintiff's allegations establish the necessary nexus between Defendants' forum contacts and Plaintiff's injuries, satisfying the second prong of specific personal jurisdiction.

## II. The Exercise of Personal Jurisdiction in This Case Does Not Offend the Notions of Fair Play and Substantial Justice.

"When a plaintiff satisfies its minimum contacts burden, the burden shifts to the defendant to demonstrate that exercising personal jurisdiction would nonetheless offend traditional notions of fair play and substantial justice." *Newsome*, 722 F.3d at 1271. "**Such cases are rare**." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009) (emphasis added). Thus, the defendant "must present a **compelling case** that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (emphasis added).

In the present case, Defendants have provided no other considerations which render jurisdiction in this case unreasonable. Defendants have purposefully directed their activities at Kansas residents, and Plaintiff's claims arise directly from those activities. After profiting from Kansas citizens while disregarding Kansas law, Defendants cannot now claim it would be unreasonable for them to answer to this Court. Accordingly, the exercise of personal jurisdiction over Defendants does not offend the notions of fair play and substantial justice.

## III. This Court may also Find Personal Jurisdiction Through Traditional Market Exploitation Principles.

For the sake of judicial economy, Plaintiff incorporates by reference the same argument set forth in Section V of his Response to Defendant 4355768 Canada Inc. For the same reasons set forth therein, the Court has another basis to find personal jurisdiction over Defendants.

## IV. Plaintiff's Group Allegations Plausibly Link Each Defendant to the Misconduct and Warrant Discovery.

The Tenth Circuit requires a plaintiff to plead "facts to make a complaint plausible," but it will not require a plaintiff to plead "facts over which it has no personal knowledge." *Brown v. City of Tulsa*, 124 F.4th 1251, 1268 (10th Cir. 2025) citing Fed. R. Civ. P. 11(b)(3). Thus, where the plausibility standard is satisfied and there is an "asymmetry of information," the plaintiff must be allowed to conduct discovery to "uncover facts beyond their personal knowledge" before the case may be dismissed. *Id*. at 1269. Accordingly, group pleadings are permissible at the motion to dismiss phase where a Complaint "reasonably alleges that the defendants are affiliated corporations and that specific facts regarding the corporate relationship between Defendants is exclusively within their knowledge." *Manhattan Constr. Co. v. Degussa Corp.*, CIV-06-611, 2007 U.S. Dist. LEXIS 23250, 2007 WL 983084, at *2 (W.D. Okla. Mar. 29, 2007).

In the present case, Plaintiff's pleadings reasonably allege that the defendant are affiliated corporations. Plaintiff's Complaint identifies ICF and Accretive as the infrastructure providers behind Streamate.com and its network of white label sites, including jerkmate.com and jerkmatelive.com *See* Doc. 1, Pl.'s Compl., ¶¶ 18-28. It also explains that ICF and Accretive manage the models, host the content, and provide backend support, while third-party promoters like CrakMedia handle branding and marketing. *Id*. The Complaint then walks through how these entities operate as an integrated commercial enterprise, centralizing content, monetization, and user access through a unified system that omits any form of age verification. *Id.* These allegations are not vague or conclusory. They connect each Defendant to the sites at issue, and explain how their coordinated actions and omissions caused harm. Further information regarding the exact relationship between each Defendant is not publicly available, and is exclusively within Defendants' knowledge. Thus, if this Courts requires Plaintiff to plead with more specificity concerning the exact relationship Defendants have to each other and the websites, then discovery must be allowed, as Plaintiff cannot plead fact over which it has no knowledge. Accordingly, at this stage, Plaintiff has made sufficient allegations to support group pleading.

## V. This Court has Supplemental Jurisdiction Over Plaintiff's Non-Consumer Protection Claims.

Here, Defendant argue that *Shrader*'*s* "harmful effects" test does not apply to claims of negligence or strict liability because such claims lack the "express aiming" element required by the *Shrader* court. *See* Doc. 31 at 11–12. Even accepting this as true, it is beyond dispute that the *Shrader* test does apply to consumer protection claims. *See XMission*, 105 F.4th at 1305 (applying *Shrader* to claims under Utah's Consumer Sales Practices Act). Moreover, the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.*, is not a strict liability statute, despite Defendant repeated and baseless assertions. *See Alenco, Inc. v. Warrington*, 560 P.3d 586, 600 (Kan. Ct. App. 2024).

Thus, as Counts I and II arise under K.S.A Chapter 50, *i.e.* the Kansas Consumer Protection Act, this Court may exercise specific personal jurisdiction over those claims using *Shrader's* framework. In that event, it may also exercise supplemental jurisdiction over Plaintiff's remaining claims.

Under 28 U.S.C. § 1367(a), in any civil action where the district court has original jurisdiction, it also has supplemental jurisdiction over all other claims that are "so related" to the claims within its original jurisdiction that they "form part of the same case or controversy under Article III." Here, Counts III - V asserting negligence, negligence per se, and product liability, all stem from the same conduct underlying Counts I - II: Defendants' failure to implement required age verification on pornographic websites accessed by a Kansas minor. These claims involve the same parties, and do not raise novel or complex state law issues. Thus, they are so related as to form the same case or controversy, and none of the exceptions in Section 1367(b) or (c) apply. Accordingly, supplemental jurisdiction over Counts III through V is proper if this Court were to find jurisdiction over Counts I-II using *Shrader*.

## VI. Plaintiffs Should Be Granted Leave to Amend if Necessary.

Plaintiff believes his Complaint meets the required pleading standard and dismissal is unwarranted. However, if this Court disagrees, Plaintiff respectfully request leave to amend and replead with the benefit of discovery. Amendment would not be futile and could cure any perceived deficiencies.

## VII. Conclusion.

For the above reasons, the Plaintiff respectfully requests that the Court DENY Defendants Motion to Dismiss.

                                                Respectfully submitted,

                                                /s/Joshua W. Ruhlmann

        Michael J. Wyatt    (#23260)
        Joshua W. Ruhlmann  (#29778)
        MANN WYATT TANKSLEY
        201 E. 1st Ave.
        Hutchinson, KS  67504-1202
        (620) 662-2400
        (620) 662-2443 (Fax)
        mike@mannwyatt.com
        josh@mannwyatt.com

        -and-

        Benjamin W. Bull*
        Christen M. Price*
        Victoria Hirsch*
        Khari James*
        NATIONAL CENTER ON
        SEXUAL EXPLOITATION
        1201 F St., NW, Suite 200
        Washington, DC 20004
        P: 202-393-7245
        bbull@ncose.com
        cprice@ncoselaw.org
        vhirsch@ncoselaw.org
        kjames@ncoselaw.org

        *Admitted via pro hac vice

        *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on August 4, 2025, the foregoing Motion was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Braden Perry Braden Perry, KS #21022 2000
KENNYHERTZ PERRY LLC
Shawnee Mission Pkwy, Suite 210
Mission Woods, Kansas 66205
Phone: (816) 527-9447
Fax: (855) 844-2914
braden@kennyhertzperry.com

-and-

William Coffield (admitted pro hac vice)
Laina Lopez (admitted pro hac vice)
BERLINER, CORCORAN & ROWE, LLP
1101 17th Street, N.W., Suite 1100
Washington, D.C. 20036
Phone: (202) 293-5555
wcoffield@bcrlaw.com
llopez@bcrlaw.com

*Attorneys for Defendants ICF Technology, Inc. and Accretive Technology Group, Inc.*

-and-

Greg A. Drumright, #20743
MARTIN, PRINGLE, OLIVER,
WALLACE & BAUER, L.L.P.
645 E. Douglas, Suite 100
Wichita, KS 67202
Telephone: (316) 265-9311
Facsimile: (316) 265-2955
gadrumright@martinpringle.com

*Attorneys for Defendant 4355768 Canada Inc. d/b/a Crakmedia Network*