### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

Q.R., a minor, by and through his natural
mother and next friend, JANE DOE,

       Plaintiff,

       v.

ICF TECHNOLOGY, INC., et al.,

       Defendants.

Case No.  6:25-cv-01093-HLT-BGS

### MEMORANDUM & ORDER

Plaintiff Jane Doe sues Defendants ICF Technology, Inc., Accretive Technology Group, Inc., and 4355768 Canada Inc. (d/b/a Crakmedia Network) on behalf of her minor child Q.R. Defendants operate a commercial website that contains pornographic content. Plaintiff alleges that Defendants failed to comply with Kansas's age-verification law and her minor child was thus able to view pornography through its website. Plaintiff asserts multiple state-law theories of recovery.

Defendants move to dismiss Plaintiff's complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Docs. 30, 32. Defendants argue they lack minimum contacts sufficient to support the Court's exercise of personal jurisdiction over them. The Court agrees and grants Defendants' motions.

## I.    BACKGROUND[1]

Kansas law establishes certain age-verification standards for commercial entities knowingly sharing or distributing through websites material harmful to minors. K.S.A. § 60-6,146. Plaintiff claims Q.R. was able to surreptitiously gain access to pornography through Defendants' websites because Defendants' age-verification measures failed to comply with Kansas's standards.

Defendants operate a set of pornographic webcamera websites. ICF and Accretive own and operate jerkmatelive.com and streamate.com. Crakmedia owns and operates jerkmate.com. Plaintiff describes jerkmate.com and jerkmatelive.com as part of a larger network of pornographic websites that duplicate and rebrand content found on streamate.com. According to Plaintiff, streamate.com is capable of being white labeled (rebranded) by other websites that use its content and infrastructure but use their own branding for the content. One "white label" of streamate.com is jerkmatelive.com. Crakmedia's site – jerkmate.com – serves in turn as a "promotional website" for jerkmatelive.com. Jerkmatelive.com serves as "the Member Zone" of jerkmate.com.

Defendants receive revenue from sales of subscriptions and through advertising. Individual webcamera models provide the content for Defendants' sites. The sites allow the models to set specific geographic limits on their content. These limits are respected across Defendants' sites. Some of Defendants' subscribers are Kansans but Q.R. is not one of them. And Defendants derive some advertising revenue from traffic attributable to Kansans. But none of Defendants are Kansas residents. Defendants ICF and Accretive are commercial entities headquartered in Seattle and organized under the laws of Washington state. Crakmedia isn't based in the United States at all. It

---

[1]    The Court resolves Defendants' Rule 12(b)(2) motion without an evidentiary hearing. It therefore assumes the truth of Plaintiff's well-pleaded allegations only to the extent Defendants haven't controverted them with evidence. If Plaintiff responds to Defendants' controverting evidence with evidence to support her allegations, then the Court accepts Plaintiff's view of things as true for the purposes of the motion. The Court does not weigh evidence or make factual findings. The statements in this section reflect Plaintiff's well-pleaded allegations plus allegations Plaintiff has supported with evidence and any unchallenged controverting statements backed up by evidence that Defendants have made.

is organized under Canadian law and is headquartered in Quebec City. Plaintiff does not allege that either ICF or Accretive have any physical presence in Kansas but does allege that ICF and Accretive generated some revenue through subscription sales and advertising from Kansas residents.

For its part, Crakmedia is not and has not ever been registered to do business in Kansas. Crakmedia also offers evidence that it does not maintain a registered agent or an office in this state or in the United States, nor does it own, lease, or rent any real or personal property in Kansas. Crakmedia also offers evidence that it does not adapt its content on jerkmate.com for Kansas users and does not feature any state-specific promotions or pricing for Kansas users. And it doesn't provide downloadable content on jerkmate.com that is designed for visitors in any particular region.

Defendants contract with Amazon CloudFront to cache and deliver their content through content delivery network (CDN) servers. At least one such server is physically located in Kansas City, Missouri, which borders Kansas. The CloudFront CDN forms part of the infrastructure of Defendants' websites. CloudFront (and CDNs generally) use a collection of geographically dispersed servers (called "edge servers") that store (or cache) content from Defendants' sites and deliver that content to geographically proximate users. One of the basic ideas behind a CDN is that it reduces barriers to quick content delivery created by geographic distance. Content cached on an edge server will travel a shorter geographic distance to the user requesting it.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges personal jurisdiction. A plaintiff overcomes this challenge by making a prima facie showing that the court has personal jurisdiction. *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1307 (10th Cir. 2024). The burden to prove

personal jurisdiction belongs to the plaintiff. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). But the burden is "light" at the pleading stage. *Id.*

A court confronting such a motion accepts as true the plaintiff's well-pleaded jurisdictional allegations unless they have been controverted by the defendant through an affidavit or other evidence. The plaintiff must then support the controverted allegations by competent proof. *Id.* Because a court is not tasked with weighing evidence at this stage, the court resolves conflicting affidavits or evidence in the plaintiff's favor and will consider the plaintiff's "prima facie showing . . . sufficient notwithstanding the contrary presentation by the moving party." *Id.* (internal quotations and citation omitted).

## III.    ANALYSIS

There are multiple parts to a personal jurisdiction analysis. The part this case focuses on is the limits to personal jurisdiction imposed by the Fourteenth Amendment's due process clause. Defendants argue that the Court lacks specific personal jurisdiction because they lack sufficient contacts with Kansas to make them amenable to jurisdiction. Defendants admit that their websites are accessible in Kansas, that they have sold subscriptions to Kansas residents, and that they generated advertising revenue from Kansans. But Defendants nevertheless argue that they did not intentionally direct any activity relevant to Plaintiff's claims at the forum. Defendants contend, in essence, that they merely operate websites that are universally accessible and any of the contacts with the forum related to Plaintiff's claims were fortuitous contacts owing to Q.R.'s unilateral conduct.

Plaintiff argues Defendants have minimum contacts with forum because (1) Kansas residents make purchases such as subscriptions through their websites, (2) Defendants' sites' geotargeting limits mean Defendants know whenever people in Kansas are accessing their sites and selectively deliver content consistent with those limits, and (3) Defendants utilize Amazon's

CloudFront CDN, which has an edge server located within a few miles of the forum to facilitate reliable delivery of content to a region that includes the forum.

The Court agrees with Defendants and grants the motion to dismiss.

### A.    Personal Jurisdiction, Due Process, and Minimum Contacts

The overarching standard for personal jurisdiction is well known. A plaintiff obtains personal jurisdiction over a nonresident defendant in a diversity action by showing that jurisdiction is legitimate under the laws of the forum state (here, Kansas) and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *PureHealth Rsch.*, 105 F.4th at 1307. This two-prong showing essentially collapses in Kansas because Kansas authorizes its courts to exercise jurisdiction over nonresident defendants to the fullest extent permitted by due process. *Progressive N.W. Ins. Co. v. New Horizons RV Corp.*, 2023 WL 7323321, at *2 (D. Kan. 2023).

Personal jurisdiction thus focuses on due process. And the touchstone for due process remains "whether the defendant purposefully established minimum contacts in the forum State." *PureHealth Rsch.*, 105 F.4th at 1307 (internal quotations and citation omitted).  A plaintiff may establish the requisite minimum contacts under one of two theories: "general jurisdiction" or "specific jurisdiction." The type of jurisdiction at-issue here is specific jurisdiction. This theory focuses on "the relationship among the defendant, the forum, and the litigation." *Id.* at 1308 (internal quotations and citation omitted). If the requisite minimum contacts exist, due process also requires the court to determine that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Id.* at 1307-08 (internal quotation and citation omitted).

**B.    Defendants' Kansas Contacts and Specific Personal Jurisdiction's Purposeful Direction Requirement**

Defendants contend the Court lacks personal jurisdiction because they did not purposefully direct their activities at Kansas and therefore haven't purposefully established sufficient minimum contacts here. The Tenth Circuit has described at least four frameworks for evaluating the sufficiency of a non-resident defendant's contacts for purposes of specific personal jurisdiction. *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 905, 909 n.21 (10th Cir. 2017). These frameworks are variously premised on (1) the defendant's continuing relationships with the forum, (2) the defendant's exploitation of commercial marketplaces in the forum, (3) the conduct by the defendant for which harmful effects are felt in the forum, and (4) the defendant's placement of goods in the stream-of-commerce.[2] *Id.*

Although there is some discussion about market exploitation, Plaintiff focuses on the third framework (harmful effects).[3] The harmful effects framework looks at the intentional conduct of a defendant and assesses whether that intentional conduct targeted the forum state and had substantial harmful effects there. *Id.* at 907. The Tenth Circuit instructs lower courts to examine "whether the defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 845 (10th Cir. 2020) (internal quotations and citation omitted).

---

[2]    Plaintiff discusses at length the sliding-scale test first described by the Western District of Pennsylvania in *Zippo Manufacturing Corp. v. Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa. 1997). The Tenth Circuit has declined to "take a definitive position" with respect to *Zippo*'s approach. *Old Republic Ins. Co.*, 877 F.3d at 908 n.18.

[3]    Plaintiff develops her market exploitation theory in perfunctory fashion and fails to address any of the various factors the Tenth Circuit has described as bearing on this analysis in *Old Republic Insurance Co. v. Continental Motors, Inc.* Plaintiff points to no nonconclusory uncontroverted allegations that (1) Defendants have a substantial and regular volume of sales, customer base, or revenues in Kansas or (2) Defendants have advertised their site extensively or have employed marketing for their site geographically targeted at Kansas. 877 F.3d at 914-16. Plaintiff has not, therefore, demonstrated purposeful direction through the market exploitation framework.

The important point is "whether the defendant <u>intended</u> its online content to create effects <u>specifically in the forum state</u>." *Old Republic Ins. Co.*, 877 F.3d at 917 n.35 (emphasis added).

The gist of Plaintiff's jurisdictional case is that Defendants knew people from Kansas were accessing their websites, that they actively facilitated this access by using a CDN with an edge server located just miles away from Kansas, and that they received money through subscriptions and in the form of advertising revenue from Kansas users. Plaintiff also argues that Defendants knew users from Kansas were accessing its site because Defendants could limit what content made it into the forum based on the geographic preferences of the individuals who made content for their sites. The inference Plaintiff asks the Court draw is that Defendants know where their users are and are making intentional decisions (automated though they might be) about which users in which places can access what content and are then facilitating that access by dint of a CDN with a nearby server.

The Court is unpersuaded. The principal difficulty with Plaintiff's jurisdictional case is that a defendant's knowledge or ability to foresee that its activities outside a forum might create effects in the forum aren't enough to create minimum contacts. Defendants' awareness that traffic and revenue were coming from Kansas do, of course, weigh in favor of finding jurisdiction. This is after all part of what the Tenth Circuit held in *Shrader v. Biddinger*, 633 F.3d 1235, 1247-48 (10th Cir. 2012), when it explained that some amount of knowledge of where one's content is going is a necessary condition for specific jurisdiction. But the Tenth Circuit's opinion in *Shrader* is similarly pellucid that this sort of knowledge isn't enough absent some <u>intentional</u> or <u>purposeful</u> act by Defendants. *See id.* And this is where Plaintiff's case falters.

Plaintiff would have the Court draw the inference that Defendants intended the effects out of which her claims arise be felt in Kansas based on (1) advertising revenue and subscription sales

in Kansas, (2) the use of geotargeting to limit certain content from finding its way to certain fora, and (3) Defendants' use of Amazon's CloudFront CDN. But even when these are taken in combination with Defendants' knowledge that some of their users are Kansas residents, the inference Plaintiff seeks to have the Court draw isn't available.

Plaintiff's geotargeting argument requires the Court to draw a negative inference that Defendants' ability to restrict certain content from entering the forum must mean that whatever content ended up there did so intentionally. But if this could support or demonstrate purposeful direction, then a plaintiff would need only to allege that a defendant who operates a website could have, but failed to, eliminate traffic to a particular forum. Embracing such a rule would run the risk of subjecting those who operate websites to the sort of "universal jurisdiction" in the internet context that appellate courts have regarded as clearly exceeding the limitations the Fourteenth Amendment's due process clause imposes.[4] The Tenth Circuit in *Shrader* cautioned against this very thing, instructing that "the maintenance of a website does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Id.* at 1241 (collecting cases). What is necessary is some indication that "a defendant deliberately directed" its content to the forum state and that it "intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id.*

Defendants' use of ad networks and subscription sales to monetize its traffic as indicia that Defendants purposefully directed the activities out of which Plaintiff's claims arise at Kansas also falls short of the mark. Defendants' receipt of revenue attributable to Kansas does not imply that Defendants deliberately directed their website's content at Kansas. This is part of what the Tenth Circuit's opinion in *Old Republic Insurance Co. v. Continental Motors, Inc.* teaches. That case

---

[4]     Certainly, a defendant's efforts to avoid certain jurisdictions would seem to suggest the defendant did not avail itself of the forum.

involved an aircraft that had crashed. The aircraft had been serviced in Colorado by a repair facility that used an allegedly defective online aircraft repair manual that the defendant had maintained. The plaintiff argued that personal jurisdiction could be had over the defendant in the District of Colorado because the defendant offered paid subscriptions to various aircraft repair resources, and the repair facility was a subscriber. The Tenth Circuit disagreed. Although the allegedly defective manual had at one time been available only to the defendant's paid subscribers, it was publicly available when the member repair facility last serviced the aircraft at-issue. And in the Tenth Circuit's view, the sale of subscription resources in Colorado wasn't a sufficiently meaningful forum connection under the effects test absent evidence that the defendant intentionally or purposefully directed its sales activities at that state's residents. *See Old Republic Ins. Co.*, 877 F.3d at 917.

Just as the generation of revenue or the sale of subscription services in the forum state was an insufficient basis upon which to premise personal jurisdiction under the harmful effects framework in *Old Republic*, so too is it insufficient here. Indeed, in the present case, any contacts with Kansas created by advertising or sales of subscriptions are based on the fortuity of other users' and subscribers' locations. What others do to connect Defendants to Kansas is beside the point. A defendant's amenability to personal jurisdiction concerns the contacts the <u>defendant</u> itself makes with a given forum, not the contacts plaintiffs or third parties make. *E.g.*, *Fluent LLC*, 955 F.3d at 847.

Defendants' use of the CloudFront CDN also does little to move the needle, jurisdictionally speaking. As noted above, a CDN like CloudFront forms part of a website's infrastructure and consists of geographically disbursed servers that contain copies of a website's content. CDNs allow a website's content to be delivered to users from a geographically proximate server. The idea is to

prevent a decline in a website's performance for users who are located far from where the website is principally hosted. A CDN ensures Defendants' websites' content is delivered through a network server that is geographically proximate to the forum, which, in turn, minimizes website load times. Shorter load times are critical because website users tend to drop off when a website slows down.

But Defendants' intention that their users be able to access their sites from a wide geographic area is not – even coupled with the knowledge that revenue-generating traffic would be coming from Kansas – the same as purposefully directing their activities at Kansas. As with the ability to limit access from a particular geographic area, Plaintiff's argument proves too much. Defendants do not controvert that they use CloudFront to help them deliver content. Defendants also do not controvert that a CloudFront edge server is located close to the forum. But there is neither an allegation nor evidence that Defendants selected the locations of any of the edge servers CloudFront employs or otherwise customized those CDNs to direct traffic more efficiently to Kansas over other locations. Technical steps taken to make a universally accessible website easier for all users to access no matter where they are located is no more purposeful direction than the act of setting up the website in the first place. And just like the act of setting up a website, were the indiscriminate use of a CDN or other technologies to indiscriminately facilitate content delivery enough, "then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist." *Fluent LLC*, 955 F.3d 844 (internal quotations and citation omitted).[5]

---

[5]    Plaintiff cites two cases from the Ninth Circuit, *Doe v. WebGroup Czech, A.S.,* 93 F.4th 442 (9th Cir. 2024), and *Will Co. v. Ka Yeung Lee*, 47 F.4th 917 (9th Cir. 2022), for the proposition that the use of a CDN within a country's geographic boundaries shows purposeful direction. Neither opinion binds this Court, and both have since been overruled on grounds unrelated to the appellate court's CDN analysis. *Will Co.* addressed the defendant's decision to host its website in the United States (in Utah) and use a North American CDN. *WebGroup* addressed the jurisdictional significance of the defendants' use of a U.S.-based CDN. But neither case does much work for Plaintiff. Both cases concerned <u>federal</u> (rather than state) causes of action against non-U.S.-based defendants. The mechanism for seeking jurisdiction over the defendants was through Rule 4(k)(2). This means that a condition precedent to the assertion of jurisdiction was that personal jurisdiction wouldn't exist in any single U.S. state.

This, of course, <u>does not mean</u> that a website owner's use of a CDN is never relevant. It also <u>does not mean</u> that a website owner's use of a CDN could never show purposeful direction. It <u>does mean</u> that more is needed to determine how the CDN is used and whether the CDN is being used to <u>target</u> a forum or an immediate region of which the forum is a part. But the Court need not interrogate precisely what might or might not be enough to resolve this case. Here, Plaintiff simply alleges that a CDN is being used and that the CDN has servers near the forum. This record is not enough to carry Plaintiff's admittedly light burden.[6] Plaintiff does not make a *prima facie* showing that Defendants intended their online content to create the effects in this forum out of which her claims arise.

## III.    CONCLUSION

The Court concludes that Plaintiff fails to state a *prima facie* basis for this Court's exercise of personal jurisdiction based on the prevailing standards and binding law.[7, 8] The Court recognizes

---

That this was a premise of the Ninth Circuit's analysis would seem to undermine – rather than support – Plaintiff's present contention that a nationwide, U.S.-based CDN supports the exercise of jurisdiction in any particular U.S. state.

[6]    *See e.g.*, Patrick Lin, *Internet Jurisdiction: Using Content Delivery Networks to Ascertain Intention*, 24 Va. J.L. & Tech. 1 (2020) (discussing CDNs and personal jurisdiction).

[7]    Where jurisdiction is lacking, 28 U.S.C. § 1631 requires courts to consider whether they should transfer the case to a district where jurisdiction exists rather than dismiss without prejudice. Section 1631 allows a court to transfer an action in lieu of dismissal "if it is in the interest of justice." Neither party specifically addresses § 1631, but a court can address it sua sponte. Here, the Court has considered whether transfer under § 1631 is in the interest of justice but finds dismissal without prejudice is appropriate instead. First, it's unclear where Crakmedia would be amenable to jurisdiction in the United States under a Kansas state law claim. Second, while it appears personal jurisdiction likely exists over the remaining defendants in Washington state, it's entirely possible these defendants are also amenable to jurisdiction in another forum. And the Court is disinclined to pre-select a venue for Plaintiff to the extent she could opt to re-file somewhere other than Washington.

[8]    The Court notes Plaintiff's perfunctory request in her response to Defendants' motions for leave to amend her complaint with the benefit of jurisdictional discovery. The Court denies the request. First, Plaintiff's request for leave to amend is improper. The Court is under no obligation to recognize a perfunctory, conditional request to amend in a response to a motion to dismiss without a formal motion, an articulated basis for the request, or a proposed amended complaint. *E.g.*, *Sullivan v. Univ. Kan. Hosp. Auth.*, 844 F. App'x 43, 51-52 (10th Cir. 2021). Second, it's Plaintiff's burden to demonstrate the need for jurisdictional discovery and any resulting prejudice from its denial. *Breakthrough Mgmt. Grp. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189-90 (10th Cir. 2010). Plaintiff has not attempted to satisfy this burden. Plaintiff has not, for instance, demonstrated what

the tension inherent in a doctrine premised on geographic limitations on its authority and the peculiarly non-territorial quality of the internet. The Court has made its best effort to navigate this developing area of the law. Nevertheless, the Court recognizes that this is an evolving arena that will benefit from further appellate-court guidance.

THE COURT THEREFORE ORDERS that Defendants' motions to dismiss for lack of personal jurisdiction (Docs. 30, 32) are GRANTED. Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: February 10, 2026                    /s/ *Holly L. Teeter*
                                            HOLLY L. TEETER
                                            UNITED STATES DISTRICT JUDGE

---

evidence she would seek to resolve controverted fact issues or to offer a more satisfactory factual showing. *See id.* To the extent Plaintiff seeks jurisdictional discovery, the Court denies the request.